[Civ. No. 64112. Second Dist., Div. Four. Apr. 19, 1982.]

RANCHITO OWNERSHIP COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
WILFRED KROM et al., Real Parties in Interest.

## COUNSEL

Costello & Walcher, Edward J. Costello, Jr., and Alan E. Walcher for Petitioners.

No appearance for Respondent.

Fulop & Hardee, Robert J. DeMarco, Kenneth B. Bley, William H. Holcomb and Eugene G. Cowan for Real Parties in Interest.

## OPINION

FILES, J.*—This mandate proceeding is brought to review an order of the superior court denying a motion to quash a second notice of lis pendens which was filed after another judge had quashed an earlier notice of lis pendens recorded by the same party in the same case. We conclude that (1) It was improper to file a second notice of lis pendens without the consent of the court and (2) assuming that a court has jurisdiction to modify or revoke its order expunging a notice of lis pendens, the showing made in the respondent court in this case does not justify any modification of the earlier action of the court expunging the notice.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

*Chronology of the Pertinent Events.*

On December 16, 1977, petitioner (Ranchito) entered into an agreement to sell a parcel of real property to Breithaupt, as evidenced by escrow instructions showing a total consideration of $841,000. Breithaupt deposited $10,000 in escrow. February 16, 1978, was indicated as the date the transaction was to be completed.

After February 6, 1978, there were oral communications between Breithaupt and the representative of Ranchito regarding the buyer's difficulty in obtaining financing. The content and import of these communications are now the subject of dispute.

On or about April 20, 1978, Ranchito received from the escrow holder an entirely new set of proposed escrow instructions describing a proposed exchange of property between Ranchito and Mr. and Mrs. Krom. Breithaupt at some time informed Ranchito that he was acting as agent for the Kroms.

On May 5, 1978, Ranchito instructed the escrow holder to cancel the escrow in its entirety.

On May 11, 1978, the Kroms filed in the superior court an action against Ranchito asking specific performance of the contract which Ranchito had entered into with Breithaupt. The complaint alleged that Breithaupt had assigned to the Kroms his right to acquire the property described in the December 16, 1977, escrow instructions.

Concurrently with the filing of the complaint, the Kroms recorded a notice of lis pendens.

On September 7, 1979, Ranchito filed its notice of motion for an order expunging the lis pendens. The motion was accompanied by declarations describing the buyers' failure to perform their contract, and pointing out the Kroms' failure to prosecute the action diligently.

On September 12, 1979, the attorneys of record for the Kroms, Jones, Day, Reavis & Pogue, gave notice of a motion to withdraw upon the ground that "Plaintiffs, by their conduct, have rendered it unreasonably difficult for Jones, Day, Reavis & Pogue to effectively carry out their employment in that over the past six months they have not, after numerous oral and written requests, provided instructions to counsel

with respect to the prosecution of this action." The motion also referred to "inability to work with cocounsel," although no cocounsel for the Kroms was identified. (A document filed later showed that Attorney Howard D. Pilch had been advising the Kroms for several months before he was substituted as an attorney of record early in October 1979.)

The Jones firm also moved for a continuance of the hearing on the motion to expunge.

No declarations were filed in opposition to the motion to expunge.

On September 28, 1979, after a hearing, Judge Roberts denied the motion for a continuance, and granted the motion to expunge, effective November 5, 1979, and the motion to relieve the Jones firm, effective 10 days after notice to the Kroms.

On October 19, 1979, the Kroms, through their second attorneys, moved for a reconsideration of the order vacating lis pendens, which motion was heard by Judge Roberts and denied November 5, 1979.

On March 24, 1981, the Kroms dismissed their second law firm and substituted in a third firm.

On July 31, 1981, the Kroms filed a "notice of motion for leave to record lis pendens," which came on for hearing before Judge Rimerman on August 19, 1981. The court's minutes for that day show that on the court's own motion the matter was placed off calendar.

There is no reporter's transcript of that hearing. The Kroms' answer to the petition filed in this court, gives this explanation: "Judge Rimerman stated that he would not make a ruling in advance, that if Mr. and Mrs. Krom had a right to record a lis pendens, they should do so and that, if Ranchito disagreed, it could challenge the recordation by a motion to expunge which Judge Rimerman would decide at that time."

At 4:01 p.m. on August 19, 1981, the same day Judge Rimerman gave the advice described above, the Kroms recorded a new notice of lis pendens.

On October 15, 1981, Ranchito filed a notice of motion to expunge the new notice of pendency of the action. The motion was heard by Judge Rimerman on November 5 and denied on November 12, 1981.

*The Purpose and Effect of the Notice of Pending Action.*

From its enactment in 1872, Code of Civil Procedure section 409 has provided that a party to an action affecting real property may record in the office of the recorder of the county in which the property is situated, a notice of the pendency of the action; and that from the time of such a filing only, is the pendency of the action constructive notice to a purchaser or encumbrancer of the property. Although this statute, as well as the antecedent common law, served to protect the plaintiff in such an action against a transfer of the property in derogation of his claim, the law also could be used as an instrument of oppression. A plaintiff having a tenuous or nonexistent claim could, by recording a notice of the action, place a cloud on the defendant's title for so long as the action remained alive, unless the defendant contributed to an undeserved settlement. (See Comment, *Abuses of the California Lis Pendens: An Appeal for Legislative Remedy* (1966) 39 So.Cal.L.Rev. 108.)

The 1968 Legislature responded to this problem by enacting Code of Civil Procedure sections 409.1 through 409.6, which established a procedure for expunging the notice of the pending action.

Under the 1968 act the motion to expunge could be granted only upon a showing by clear and convincing evidence that the moving party was entitled to that relief.

The 1976 amendment altered both the burden of persuasion and the quantum of proof. (See discussion in *Malcolm v. Superior Court* (1981) 29 Cal.3d 518, 524 [174 Cal.Rptr. 694, 629 P.2d 495].)

Section 409.1 now provides that the court shall, upon motion of a party, "order that the notice be expunged, unless the party filing the notice shows to the satisfaction of the court, by a preponderance of the evidence, that:

"(a) The action does affect title to or right of possession of the real property described in the notice; and

"(b) Insofar as the action affects title to or right of possession of the real property described in the notice, the party recording the notice has commenced or prosecuted the action for a proper purpose and in good faith."

*In Malcolm* v. *Superior Court* (1981) 29 Cal.3d 518, 526-528 [174 Cal.Rptr. 694, 629 P.2d 495], the opinion explains that the trial court, in passing upon a motion to expunge, is not obliged to consider the relative merits of the opposing parties' cases, but is to determine whether the party recording the notice has commenced and prosecuted the actions for a proper purpose and in good faith. The opinion also points out that a party's motive may be determined by circumstantial evidence, and "that if a plaintiff in response to a motion to expunge fails to present by affidavit or other means even a 'prima facie' case on the merits of his claim, [fn. omitted] a trial court could appropriately conclude that the plaintiff has failed to meet his burden to demonstrate that the action is being prosecuted with the requisite good faith." (*Id.* at p. 528.)

The effect of an order of the superior court expunging the notice of lis pendens is stated in section 409.1, subdivision (b): "Upon recordation of a certified copy of the order expunging a notice of pendency of the action in the office of the county recorder in which the notice of the pendency of the action was recorded neither the notice of the pendency of the action nor any information derived therefrom, prior to the recording of a certified copy of the judgment or decree issued therein, shall constitute constructive or actual notice of any of the matters contained therein, or of any of the matters relating to such action, or create any duty of inquiry in any person thereafter dealing with the property described therein."

*The Unauthorized Second Notice of Lis Pendens.*

The text as well as the history of the statute makes clear that an order expunging the notice is intended to remove an encumbrance, and to enable the record owner to deal with his property as though no notice of lis pendens has been filed. The expunging order is made after a hearing, upon evidence, at which the court has made a decision that the moving party is entitled to deal with the subject property unencumbered by the other party's notice.

If the party whose notice was expunged records a second notice, the effect is to obstruct, for an appreciable time, exactly what the court intended to accomplish. A motion to expunge the second notice cannot be heard in less than 20 days (§ 409.1, subd. (b)) and an order expunging a notice cannot be effective until the time within which a petition for mandate may be filed (§ 409.5), which time must be at least 20 days

(§ 409.4). Thus the mere act of filing the second notice has the effect of encumbering the subject property for at least 40 days. An encumbrance for such a period may under some circumstances impose a severe hardship upon the record owner, particularly if a plan to sell or encumber the property is pending. Even if a court were to determine eventually that the second notice was "void," the notice would probably have had its chilling effect on any pending transaction.

To allow a party to record, at will, a second notice of lis pendens after the first had been expunged would simply invite more of the abuse which the statute was intended to cure. Such a tactic, undertaken without the prior consent of the court, should be recognized for what it is: An ex parte interference with the status established by the court's order.

■ *Rebco Development, Inc.* v. *Superior Court* (1977) 67 Cal. App.3d 13 [136 Cal.Rptr. 351], cited by counsel for the Kroms, does not support their position. One distinction is that Rebco's two notices of lis pendens were filed in different actions against different defendants. Rebco's first action was brought to obtain specific performance of an alleged contract to sell a 40-acre tract. Rebco's notice of lis pendens was expunged, not under section 409.1 for failure to prove good faith, but under section 409.2 upon the ground that adequate relief could be secured by an undertaking to indemnify Rebco. The defendant in that action then conveyed the 40 acres to another party, whereupon Rebco brought a separate action against the transferee, and recorded a new notice of lis pendens. The trial court expunged that notice upon the ground that the expungement order in the first case collaterally estopped Rebco. The Court of Appeal ordered the trial court to set aside its order expunging the notice in the second action, pointing out that the issues in the two expungement hearings were not identical; and that in the second case the trial judge did not consider the matters of adequate relief and the amount of the undertaking at the time of the hearing. Nothing in that opinion suggests that a party is free to record, at his discretion, a second notice of the pendency of the same case.

Counsel for the Kroms are not subject to censure for recording a second notice in this case, because they did first ask leave of court. The problem has arisen because a superior court judge refused to hear their motion and then gave some inappropriate advice.

*The New York Doctrine of No Second Chance.*

Ranchito contends that the trial court's decision expunging a notice of the pendency of the action precludes any subsequent notice in the same action, with or without judicial approval. No decision by a California appellate court has been found on this subject. Ranchito relies upon New York cases, particularly *Israelson v. Bradley* (1955) 308 N.Y. 511 (127 N.E.2d 313, 52 A.L.R.2d 1304]).

In New York, section 120 of the Civil Practice Act authorized the filing of a notice of lis pendens at the time the complaint was filed, and required that service of summons must be made on defendant within 60 days after the filing. In the *Israelson* case the plaintiff filed an action with a notice of pendency in the office of the county court, but failed to serve the summons and complaint upon any of the defendants. Eight months later the plaintiff then filed a similar action and a new notice of pendency in the Supreme Court of that county, and a few days later the notice in the first case was cancelled by the county court, with plaintiff's consent. The Supreme Court denied the motion to cancel the notice in the second case.

The latter order was reversed by the New York Court of Appeals with this explanation: "Permission to file a notice of pendency of action in specified cases is an added privilege granted to a litigant by statute which does not affect his cause of action. . . . This is an extraordinary privilege which has been granted to a litigant upon the mere filing of the notice of a pendency of action, a summons and a complaint and strict compliance with the requirements of section 120 is required. Proper administration of the law by the courts requires promptness on the part of a litigant so favored and that he accept the shield which has been given him upon the terms imposed and that he not be permitted to so use the privilege granted that it becomes a sword usable against the owner or possessor of realty. If the terms imposed are not met, the privilege is at an end."

We are not aware of any authority for classifying the notice of lis pendens in California as any more "extraordinary" than other statutes governing procedure which are intended to assist the court system in bringing about a just resolution of civil disputes. The original purpose of the statutory notice of action pending was to overrule the harsh common law doctrine that a transferee of land took with constructive notice of title defects asserted in any pending action. The statute did not give

the plaintiff any privilege he did not already have under the common law. The statute deprived the plaintiff of that privilege unless he recorded a notice in a place where a prospective buyer or encumbrancer could readily find it. (See *Sampson* v. *Ohleyer* (1863) 22 Cal. 200, 210.) As we have pointed out above, subsequent enactments have been designed to balance the need of a plaintiff to maintain the status quo against the need of a defendant for protection against abuse of the procedure.

These statutes contain no prohibition against a judicial reexamination of that balance after the court has once made its order expunging the notice, and we see no policy reason for our declaring that such an absolute prohibition exists.

Although we decline to adopt Ranchito's position that the trial court has no power under any conceivable circumstances to undo its order expunging a notice of lis pendens, we do not deem it appropriate in this case to suggest the conditions under which the trial court may do so. ▮ For the purpose of this case it is sufficient that we explain why we believe that the Kroms have not shown good cause for reexamination of the expungement order.

*The Showing Made on the Issue of Proper Purpose and Good Faith.*

The motion to expunge the first notice of lis pendens came on for hearing on September 28, 1979. The motion was supported by (a) the escrow instructions requiring that the transaction be completed by February 16, 1978, and stating "time is declared to be the essence;" and (b) the declaration of Lawrence Silk, one of the Ranchito partners, stating that in March 1978 Ranchito notified Breithaupt that the escrow would not be extended past mid-April of 1978, that neither Breithaupt nor the Kroms had placed the required funds in the escrow, that Breithaupt's proposal for an exchange of property between the Kroms and Ranchito was unacceptable to Ranchito, and that Ranchito had given written notice cancelling the escrow on May 5, 1978. The Kroms offered no evidence. The memorandum filed by the Kroms' attorneys explained that they had diligently attempted to obtain instructions from the Kroms with respect to the further prosecution of the case but had been unable to do so. The memorandum added: "In light of the inability of Jones, Day to obtain the cooperation of and further instructions from plaintiffs, it cannot present a substantive opposition to defendants Motion to Expunge Lis Pendens Notice From Record."

Since the plaintiffs had not sustained their burden of proving that the action was being prosecuted for a proper purpose and in good. faith, Judge Roberts granted the motion to expunge.

The Kroms' motion for reconsideration, filed October 19, 1979, was accompanied by a declaration of Wilfred Krom, asserting that he had acted in good faith, and that he had been advised during the course of the escrow that he "had received an extension of time equal to that necessary to secure financing." No explanation was given as to the basis of his belief or the source of his advice. No explanation was offered for the inaction of plaintiff's counsel during the 16 months between the filing of the action and the notice of motion to expunge the lis pendens. Nor did the Kroms comment upon the statement of their first attorneys that they were unable to oppose the motion to expunge because of lack of cooperation and instructions from the Kroms.

The notice of motion for leave to record a second lis pendens filed by plaintiffs' third firm of attorneys on July 31, 1981, was accompanied by new declarations which added very little to what had been said before. A declaration by Breithaupt disputed some statements which had been made by Silk, and asserted that Ranchito's representative had "granted us an extension for as long as required to arrange the financing." A declaration by Mrs. Krom asserted that she was prosecuting the lawsuit in good faith, but gave no information as to the source of her belief that the case had merit. Her declaration also volunteered the information that she and her husband had a net worth in excess of $1.5 million, including liquid assets in excess of $350,000.

*Summary.*

In order to avoid expungement of their notice of pending action, the Kroms had the burden of showing, at the September 28, 1979, hearing, that they had commenced and prosecuted the action for a proper purpose and in good faith. They failed to do so. The facts, if there were any, which would show good faith and proper purpose were within the knowledge of the Kroms. The only explanation at any time for their failure to make a showing on September 28, 1979, was in the declaration of their attorneys that "over the past six months they have not, after numerous oral and written requests, provided instructions to counsel with respect to the prosecution of this action." If the Kroms had had, in September 1979, a factual basis for believing that their suit had

merit, they could have told their attorneys, who could easily have presented that information in opposition to the motion to expunge.

No good cause has been shown for giving the Kroms a second opportunity to cloud the title to Ranchito's property.

Let a writ of mandate issue requiring the respondent court to vacate its minute order of November 12, 1981, denying defendants' motion to expunge, and make a new order expunging the notice of lis pendens filed August 19, 1981.

Woods, Acting P. J., and McClosky, J., concurred.

A petition for a rehearing was denied May 4, 1982, and the petition of real parties in interest for a hearing by the Supreme Court was denied June 23, 1982.